**William M. GUMMO, Plaintiff–Appellant,**

v.

**VILLAGE OF DEPEW, NEW YORK, Defendant–Appellee.**

**No. 1052, Docket 97–7849.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1998.

Decided Nov. 13, 1998.

Glenn Edward Murray, Buffalo, N.Y., for Plaintiff–Appellant.

Paul David Weiss, Kenmore, N.Y., (Wayne R. Gradl, Weiss, Stocker & Fox, Kenmore, N.Y., On Brief) for Defendant–Appellee.

Before: JACOBS and LEVAL, Circuit Judges, and MISHLER, District Judge.[*]

LEVAL, Circuit Judge:

Plaintiff William M. Gummo brought this action against the Village of Depew, alleging that it terminated his employment as a police officer because he was a member of the United States Air Force Reserves, in violation of the Veterans' Reemployment Rights Act, 38 U.S.C. § 2021 *et seq.* (1988)(current version at 38 U.S.C. § 4301 *et seq.* (1994))(the "Act" or "VRR Act"). He appeals from a judgment of the United States District Court for the Western District of New York (Elfvin, *J.*) entered for the Village after a non-jury trial. *Gummo v. Village of Depew,* 1997 WL 311462 (W.D.N.Y. June 4, 1997). The district court found that Gummo's reservist status was not a substantial or motivating factor in his discharge. *Id.* at *3–4. We agree and therefore affirm.

## BACKGROUND

The district court found the following facts. The Village of Depew, New York, employed Gummo as a police officer from 1977 until his discharge in January 1990. In December 1986, he enlisted in the United States Air Force Reserves and was assigned to an Air Force base in Niagara Falls, New York, some thirty miles from Depew. As a member of the Reserves, Gummo was obliged to participate in training sessions one weekend each month and for two weeks each year. The Village police department had a policy under which it granted leave for such training when a reservist presented a copy of his military orders. Before 1988, Gummo had followed this policy by presenting in August or September his official training schedule for the upcoming fiscal year.

In August and September 1988, Captain James A. Brennan of the Village police department repeatedly asked Gummo to submit a copy of his official military orders for the upcoming fiscal year so that his police work schedule could be arranged accordingly. In response, Gummo submitted a handwritten note containing his training schedule. Captain Brennan advised Gummo that the note was unsatisfactory because it was not official. After Gummo failed to comply with additional oral requests for his official schedule, Captain Brennan requested it in writing. The request advised Gummo that the department required that he submit official military orders before he could be granted leave for his training, and that the handwritten note did not suffice. In response, Gummo submitted an incomplete copy of his official schedule that showed only his weekend drilldate schedule; Gummo had redacted the information regarding his annual two-week tour. On December 25, Gummo submitted to Captain Brennan a typed note indicating that his annual tour was scheduled for June 10–24, 1989.

Meanwhile, Village of Depew Police Chief John T. Maccarone contacted Gummo's military commander to obtain an official copy of Gummo's military schedule. The copy he received confirmed his suspicion that the copy Gummo had submitted earlier had been redacted. On January 3, 1989, Chief Maccarone summoned Gummo to police headquarters to meet with him. After Gummo stated that he was occupied for the day, Maccarone instructed him to meet with him

[*] The Honorable Jacob Mishler, United States District Judge for the Eastern District of New York, sitting by designation.

that evening. Gummo neither came to the meeting nor called to say he could not come. On January 4, Gummo appeared at police headquarters unannounced and without an appointment, and asked to see Chief Maccarone. Maccarone met with Gummo and inquired about his failure to submit a complete copy of his orders. Gummo stated that he was privileged to withhold information from the police department and that Maccarone had had no right to approach his military superiors to obtain a copy of his orders. During the meeting Gummo became visibly angry, disrespectful, and physically threatening.[1] As a result of his conduct at this meeting, Gummo was formally charged with several acts of insubordination. After a public hearing held by the Village's mayor and Board of Trustees, Gummo was found guilty on most counts and suspended for thirty days without pay.

In May 1989, Gummo submitted to Captain Brennan a copy of official orders indicating that his annual tour would begin at 7:30 a.m. on June 9, 1989 and end on June 24. The order authorized one travel day in connection with the tour. Upon receiving Gummo's official orders, Captain Brennan scheduled Gummo to be off duty from June 9–24. According to the police department's schedules, however, Gummo was due to work the night shift of June 8–9, from 10:45 p.m. on June 8 to 6:45 a.m. on June 9, forty-five minutes before Gummo was scheduled to report to the Air Force base in Niagara Falls for his annual tour. Gummo asked is superiors in the department for military leave for the night shift of June 8–9. His request was denied on the ground that he had not submitted official military orders specifically designating June 8 as a leave day, and that Gummo had had a month to submit such orders or make other arrangements. In the afternoon of June 8, Gummo advised Chief Maccarone that his military superiors had officially designated June 8 as a leave day and would mail documentation of such directly to

Maccarone. Based on this representation, Maccarone granted Gummo leave for the June 8–9 shift. In the meantime, Gummo had received from his military superiors permission for late arrival at the Air Force base. Gummo did not notify the police department of that fact. Although he had been granted leave for the June 8–9 night shift, Gummo reported to work without authorization on the evening of June 8, stayed half the shift until 3:00 a.m., and then left work.

On June 27, after Gummo's annual tour had ended, Chief Maccarone summoned him to discuss the events of June 8. During the meeting, Gummo was generally evasive and uncooperative. He refused on Fifth Amendment grounds to comply with Chief Maccarone's direct orders that he answer questions concerning the events of June 8, and he requested counsel or union representation. Later Chief Maccarone formally charged Gummo with falsely stating on June 8 that military documentation would be mailed, altering the duty roster schedule when he reported to work on June 8, disobeying a lawful order to answer questions on June 27, and falsely stating on June 27 that he had not previously, on June 8, made reference to the mailing of the military documentation. After a public hearing, an impartial hearing officer appointed by the Village Board of Trustees found Gummo guilty of all charges except alteration of the duty roster schedule. The hearing officer recommended the department discharge Gummo on the grounds that his insubordination provided good cause for dismissal, and that four previous disciplinary actions against him, including the thirty-day suspension without pay in February 1989, had not had a rehabilitative effect. The Village Board of Trustees adopted the hearing officer's recommendation and discharged Gummo on January 31, 1990. Gummo initiated and then abandoned a state court challenge to his discharge.

---

1. Chief Maccarone testified that Gummo "exploded into a rage" and put "his index finger within inches of [Chief Maccarone's] face and said, 'I want you to know, one way or another, I am going to get you.'" Chief Maccarone also testified that Gummo said to him, "'I hate working for a man like you. You give me nothing but trouble ... I don't like the idea of coming in here on my own time. If you want to talk to me, I work the eleven at night to seven in the morning shift. Come in and see me at that time.'" Gummo left the meeting after being ordered not to leave.

Gummo brought this action in March 1993, alleging that his suspensions and discharge were motivated by his reservist status, in violation of the VRR Act. He principally sought reinstatement and compensation for lost wages and benefits. The Village moved for summary judgment, and Gummo cross-moved for partial summary judgment. The district court granted the Village's motion and denied Gummo's. *Gummo v. Village of Depew,* 1995 WL 264665 at *4 (W.D.N.Y. April 28, 1995). Gummo appealed. We vacated and remanded for further proceedings. *Gummo v. Village of Depew,* 75 F.3d 98, 109 (2d Cir.1996)("*Gummo I* "). After a non-jury trial, the district court found that Gummo's reservist status was not a motivating factor in the department's decision to discharge, and that he had been discharged for his "uncooperative, combative, dishonest and otherwise insubordinate behavior and his acts of misconduct." *Gummo v. Village of Depew,* 1997 WL 311462, at *3–4 (W.D.N.Y. June 4, 1997). The court concluded that the Village did not violate the VRR Act. *Id.* at *4. Gummo brought this appeal.

## DISCUSSION

To prevail in his action, Gummo was required to show by a preponderance of the evidence that his status as a reservist was a substantial or motivating factor in his discharge. *Gummo I,* 75 F.3d at 106–07. He failed to do so. The evidence amply supported the district court's finding that the Village fired Gummo because of his "uncooperative, combative, dishonest and otherwise insubordinate behavior and his acts of misconduct," and that "his military reserve status played absolutely no role in the decision to terminate him." *Gummo,* 1997 WL 311462, at *3. Gummo failed to comply with numerous requests by his commanding officers in the department that he submit his official military orders. On January 4, 1989, he refused to answer questions posed by Chief Maccarone and became visibly angry, disrespectful, and physically threatening. As a result of this conduct he was suspended for thirty days without pay. Despite his having been granted paid leave for the June 8–9 night shift based on his representation that his military superiors had officially designat-

ed June 8 a leave day, he reported to work without authorization on June 8 and then left work halfway through the night shift. At his June 27 meeting with Chief Maccarone, he did not comply with repeated orders to answer questions about the events of June 8.

Gummo argues that the Act was violated when his police superior told him he would need to submit military orders designating June 8 as a leave day in order to receive leave from his police work for that day. We need not consider that question to dispose of this appeal. First, Gummo was granted leave from his police department duties for his June 8–9 shift. He cannot contend he did not receive the leave required by the Act. More importantly, his claim in this action was not that the Village had demanded unnecessary justification before allowing him a day of leave. It was that he had been illegally discharged by reason of his reservist status. *Gummo I,* 75 F.3d at 102.

The Village abundantly showed that his discharge was attributable to his dishonesty and insubordination—not to his reserve status. Whether the police chief was correct or incorrect in asking for confirmation of military leave for June 8 is irrelevant to the reasons for Gummo's discharge. Even assuming Gummo is correct in his contention that he should not have been asked to produce military orders designating a leave day in order to be excused from his civilian duties, that would not excuse his insubordination, misconduct, or dishonesty. The Village was fully entitled to discharge Gummo for his egregious misconduct.

## CONCLUSION

The judgment of the district court is affirmed.